
12/17/2008

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| JEAN A. WHITE, | § | Case No. 07-41509 |
| | § | |
| Debtor. | § | |
| | § | |
| JEAN A. WHITE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. No. 07-4157 |
| | § | |
| EDUCATIONAL CREDIT | § | |
| MANAGEMENT CORP. and | § | |
| THE EDUCATIONAL RESOURCES | § | |
| INSTITUTE, INC., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

Jean A. White (the "Plaintiff") initiated this adversary proceeding seeking a determination of the dischargeability of student loans. The Plaintiff seeks a determination that repayment of the loans constitutes an undue hardship pursuant to 11 U.S.C. §523(a)(8). Trial was held on November 12, 2008. Upon consideration of the pleadings, the evidence presented, and the arguments made at trial, the Court makes the following findings of fact and conclusions of law:[1]

### I. Jurisdiction

The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§1334(a) and 157(a) as well as the Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro*

---

[1] To the extent any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. Likewise, to the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such.

*Tunc* entered by the United States District Court for the Eastern District of Texas. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I).

## II. Procedural Background

On July 9, 2007, the Plaintiff initiated the main bankruptcy case associated with this adversary proceeding (the "Main Case") by filing her voluntary petition for relief under Title 11 of the United States Code (the "Bankruptcy Code"). On September 12, 2007, the Plaintiff initiated this adversary proceeding by filing the Complaint to Discharge Student Loans (the "Complaint"). By the Complaint, as amended, the Plaintiff seeks a discharge of several student loans disbursed by Wells Fargo ELT ("Wells Fargo") and JP Morgan Chase Bank ("Chase Bank") pursuant to §523(a)(8) of the Bankruptcy Code.[2]

On October 12, 2007, The Education Resources Institute, Inc. ("TERI") filed its Answer to Plaintiff's Complaint to Discharge Student Loans Pursuant to §523(a)(8) (the "Answer") as well as a Motion to Intervene Pursuant to Bankruptcy Rule 7024(a) (the "Motion to Intervene"). By the Answer and the Motion to Intervene, TERI asserted that it, and not Chase Bank, is the real party in interest in this adversary proceeding with respect to the student loans issued to the Plaintiff by Chase Bank. The Court entered an order granting the Motion to Intervene on October 18, 2007.

In her Complaint, as amended, the Plaintiff asserted her belief that Education Credit Management Corp. ("ECMC") is the real party in interest for Wells Fargo.[3] The

---

[2] It is well settled law that student loan debts are presumptively non-dischargeable in bankruptcy pursuant to §523(a)(8). *Tenn. Student Assistance Corp. v. Hood,* 541 U.S. 440, 450 (2004). It is also well settled that §523(a)(8) is "self-executing" and that a debtor must affirmatively initiate an adversary proceeding to determine the student loan debt is discharged. *Id.* at 450.

[3] The Plaintiff's Complaint actually names Sallie Mae as a defendant rather than Wells Fargo. However, Sallie Mae is not mentioned in ECMC's answer or in the parties' Joint Pretrial Order. In the

Plaintiff further stated her belief that ECMC would appear and file a motion to substitute with respect to the loans issued by Wells Fargo. Indeed, on October 17, 2007, ECMC answered the Plaintiff's Complaint. ECMC asserted in its answer that it is the holder of several student loans assigned to it after the Plaintiff filed the Main Case.

### III. Factual Background

#### A. The Plaintiff's Education and Employment

The Plaintiff was born on December 29, 1957. She is unmarried and has no dependents. The Plaintiff has been unemployed since May 2008 and has applied to the disability program administered by the Social Security Administration. The Plaintiff is currently living with her parents, who are supporting her.

The Plaintiff graduated from high school in 1976. In or around 2001, she began attending the University of Texas at Dallas ("UTD"). The Plaintiff obtained a bachelor's degree in statistics in May 2005.

The Plaintiff has always worked as a medical secretary. She testified that she worked an extra job as well as overtime during 2002 and 2003 so that she could afford to buy a home. In November 2003, the Plaintiff purchased a new Chevrolet truck. In October 2004, the Plaintiff purchased a newly constructed home in Providence, Texas. The Plaintiff testified that her down payment was approximately $7,000 and that her closing expenses were approximately $1,000.

The new home and truck consumed nearly all of the Plaintiff's income. In November 2004, the Plaintiff took out a loan from Chase Bank to finance her last year of studies at UTD. The loan was disbursed on November 5, 2004. As of October 28, 2008,

---

Joint Pretrial Order, the parties agree that Wells Fargo issued several Federal Stafford Loans to the Plaintiff. The parties further agree that United Student Aid Funds, Inc. was the original guarantor and owner and holder of the loans and that United Student Aid Funds, Inc. has assigned the loans to ECMC.

the balance was approximately $26,393.58 in unpaid principle and $1,970.24 in unpaid interest, with interest continuing to accrue at the rate of 8.419%.

The Plaintiff hoped to use her statistics degree to obtain a job at the U.S. Bureau of Labor and Statistics (the "Bureau"). She applied to the Bureau after obtaining her bachelor's degree from UTD. She discovered, however, that she needed a master's degree in order to be considered for employment.

The Plaintiff thereafter enrolled at Walden University for a master's degree in public administration. Walden University offers online degrees, which allowed the Plaintiff to take online courses while continuing to work as a medical secretary. The Plaintiff obtained two additional loans from Chase Bank in order to finance her studies at Walden University. The first loan was disbursed on August 11, 2005 and, as of October 28, 2008, had a balance of approximately $24,966.42 in unpaid principle and $1,863.71 in unpaid interest, with interest continuing to accrue at the rate of 8.419%. The second loan was disbursed on July 6, 2006 and, as of October 28, 2008, had a balance of approximately $32,724.82 in unpaid principle and $2,802.62 in unpaid interest, with interest continuing to accrue at the rate of 9.669%.

In addition to the two loans from Chase Bank, the Plaintiff obtained several loans from Wells Fargo ELT to finance her studies at Walden University. On December 15, 2006, the Plaintiff obtained a Subsidized Federal Stafford Loan in the amount of $2,834 and an Unsubsidized Federal Stafford Loan in the amount of $3,334. On March 14, 2007, the Plaintiff obtained a Subsidized Federal Stafford Loan in the amount of $2,833 and an Unsubsidized Federal Stafford Loan in the amount of $3,333. The balance owed by the Plaintiff on these loans consisted of unpaid principle in the total amount of

4

$12,662.85 and unpaid interest in the total amount of $879.34, with interest continuing to accrue at the rate of $2.36 per diem.

There is no dispute that the Plaintiff suffers from medical problems. The Plaintiff was diagnosed with autoimmune hepatitis in 1999. The Plaintiff nonetheless continued to work full time. From July 2001 through February 2005, the Plaintiff was employed as a medical secretary by Richardson Regional Medical Center. Her gross annual income was $39,179.00 for 2002, $37,422 for 2003, and $35,250 for 2004. In March 2005, the Plaintiff took a medical secretary job with Presbyterian Hospital – Denton, which the Plaintiff testified was closer to her new home. The Plaintiff's gross annual income for 2005 was $23,860.

The Plaintiff's autoimmune hepatitis occasionally flares up without warning. In April and May 2007, the Plaintiff was briefly hospitalized on two occasions. The Plaintiff's doctor released her to return to light duty work on July 4, 2007, and the Plaintiff did, in fact, return to work.

The Plaintiff filed a bankruptcy petition on July 9, 2007. At that time, the Plaintiff was current on her obligations with respect to the loan she had obtained from Chase Bank for her studies at UTD as well as the first loan she obtained from Chase Bank for her graduate studies at Walden University. The Plaintiff had made regular monthly payments on these two loans from July 14, 2006 through April 30, 2007. The repayment period on the Plaintiff's remaining student loans had not yet begun when she filed the Main Case and, therefore, she had not yet made any payments on the third loan disbursed by Chase Bank or the loans disbursed by Wells Fargo.

The Plaintiff ceased making payments on her home mortgage after filing for

5

bankruptcy. Her mortgage lender eventually foreclosed on her home, and the Plaintiff moved into her parent's home in Durant, Oklahoma. She quickly obtained a job at a telemarketing company, PRC, LLC ("PRC"). Within six weeks, however, the Plaintiff suffered a hemorrhagic stroke due to high blood pressure.

The Plaintiff was admitted to a hospital on December 18, 2007. At the hospital, the Plaintiff was prescribed blood pressure medication. She was released without restrictions on December 22, 2007, and she has not required any physical therapy or suffered any lasting injury as a result of the hemorrhagic stroke. The Plaintiff testified that she did not return to work for PRC because she was concerned that stress related to working for a telemarketer had led to her stroke.

The Plaintiff testified that she applied for jobs at various companies located in Durant, Oklahoma as well as with the City of Durant while working for PRC. These jobs appear to have been wholly unrelated to her undergraduate degree in statistics. In January 2008, the Plaintiff saw an opening for a clerical position at Mays Housecall Home Health, Inc. ("Mays"). The Plaintiff had worked at Mays many years before, and some of the staff remembered her. She applied for the position and was quickly hired. The Plaintiff earned $9 an hour at Mays for a gross monthly salary of $1,440.

The Plaintiff underwent a colonoscopy and sinus surgery in the spring of 2008. Both procedures were outpatient procedures. On her doctor's advice, the Plaintiff did not return to work for a week following her sinus surgery. In addition, in or around May 2008, the Plaintiff's hepatitis flared up and she did not work for some period of time. The Plaintiff returned to work at Mays on Monday, May 5, 2008, but she received a disciplinary report from her employer on Friday, May 9, 2008, because she was working

6

too slowly. The Plaintiff, who felt that she was working as fast as she could, did not return to work at Mays after receiving the disciplinary report.

The Plaintiff has not made a payment on any of her student loans since filing the Main Case. The Plaintiff testified that she is aware of the William D. Ford Federal Direct Loan Program, also referred to as the Direct Loan Program. The Direct Loan Program offers an Income Contingent Repayment Plan ("ICRP"), which allows eligible borrowers to make reduced student loan payments based upon factors including the borrower's adjusted gross income, the total amount of the borrower's loans and his family size.[4] The Plaintiff has not applied to the Direct Loan Program, and she testified that she is unsure of whether she is eligible in light of her bankruptcy and her pending disability application.

The Plaintiff's current bankruptcy schedules reflect that her living expenses are minimal. The Plaintiff ceased making payments for her Chevrolet truck in May 2008, and the secured lender has foreclosed on its interest in the vehicle. Her largest expense is $432 each month for health insurance. The Plaintiff's mother is paying for her health insurance as well as her other living expenses, including $240 per month for food, $175 for medical and dental expenses, and $100 for transportation expenses. The remaining repayment period under the Plaintiff's various student loans is at least fifteen years.

## IV. Discussion

Section 523(a)(8) of the Bankruptcy Code provides that a debt for "a loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit" shall not be discharged "unless excepting such

---

[4] Various repayment plans, including the ICRP, are described more fully at 34 C.F.R. §685.208(f).

7

debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents …." This exception to discharge "was enacted to prevent indebted college or graduate students from filing for bankruptcy immediately upon graduation, thereby absolving themselves of the obligation to repay their student loans." *In re Hornsby*, 144 F.3d 433, 436-37 (6th Cir. 1998). However, as the statutory text suggests, a discharge of a student loan is possible if a debtor can demonstrate, by a preponderance of the evidence, that to hold the student loan non-dischargeable would impose an "undue hardship" upon her and her dependents.

There term "undue hardship" is not defined in the Bankruptcy Code nor has any particular judicial definition been endorsed by the United States Supreme Court. *Kettler v. Great Lakes Higher Educ. Serv. Corp. (In re Kettler)*, 256 B.R. 719, 722 (Bankr. S.D. Tex. 2000). Most courts have endorsed a three-prong test articulated by the Second Circuit Court of Appeals in *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395 (2nd Cir. 1987), under which a debtor is required to show that: (1) the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loan; (2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loan; and (3) the debtor has made good faith efforts to repay the loan. *Id*. at 396. The *Brunner* test was expressly adopted by the Fifth Circuit in *In re Gerhardt*, 348 F.3d 89, 91 (5th Cir. 2003). Therefore, this Court reviews the Plaintiff's evidentiary presentation in light of the *Brunner* factors in order to determine whether she has met her burden to demonstrate the existence of an undue hardship.

8

### A. The First Prong of *Brunner*

The first element of the *Brunner* test requires a determination of what constitutes a "minimal standard of living." While a precise definition has yet to be provided, "[c]ourts universally require more than temporary financial adversity and typically stop short of utter hopelessness." *Nary v. The Complete Source (In re Nary)*, 253 B.R. 752, 761 (N.D. Tex. 2000) (quoting *Tenn. Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433, 437 (6th Cir. 1998)). "Mere financial adversity is insufficient, for that is the basis of all petitions in bankruptcy. On the other hand, the Bankruptcy Code does not require that the debtor live in abject poverty before a student loan may be discharged." *Yapuncich v. Montana Guaranteed Student Loan Program (In re Yapuncich)*, 266 B.R. 882, 888 (Bankr. D. Mont. 2001) (internal quotations omitted).

In this case, the Court finds that the Plaintiff has satisfied the first prong of the *Brunner* test. The Court specifically finds that, given the Plaintiff's current income, she cannot maintain a minimal standard of living if she is forced to repay the loans at issue. The Plaintiff's current monthly income consists entirely of contributions from her mother to pay her minimal living expenses. The Court concludes that, under the circumstances, the Plaintiff is not currently able to make monthly payments on the loans and still maintain a minimal standard of living.

### B. The Second Prong of *Brunner*

The second prong of the *Brunner* test asks if additional circumstances exist indicating that the debtor's inability to maintain a minimal standard of living is likely to persist for a significant period of time. *In re Gerhardt*, 348 F.3d at 92. "Additional circumstances" encompass circumstances that impact on the debtor's future earning

9

potential but which were either not present when the debtor applied for the loans or have since been exacerbated. *Id*. This second prong of *Brunner* is meant to be a demanding requirement. *Id*. Establishing that the debtor is currently in financial straits is not enough. *Id*. Instead, the debtor must prove a "total incapacity" to pay her debts in the future for reasons beyond her control. *Id*. (quoting *In re Faish,* 72 F.3d 298, 307 (3rd Cir. 1995)).

The existence of a debilitating medical condition is not a prerequisite to establishing the existence of "undue hardship" under § 523(a)(8). *See McGinnis v. PHEA (In re McGinnis),* 289 B.R. 254, 256 (Bankr. M.D. Ga. 2002). Rather, as long as a debtor can demonstrate that some condition will, in all likelihood, inhibit her long-term ability to pay the student loan debt, the second prong of the *Brunner* test has been satisfied. A debtor is not required to present expert testimony to corroborate her own testimony about her health. *See Barrett v. Educ. Credit Mgmt. Corp. (In re Barrett),* 487 F.3d 353, 359-360 (6th Cir. 2007*); Educ. Credit Mgmt. Corp. v. Mosley (In re Mosley)*, 494 F.3d 1320, 1325 (11th Cir. 2007). In addition, a court may consider non-medical factors, including (1) whether the debtor failed to derive any economic value from his educational debts, (2) the debtor's overall lack of education and/or training, (3) the number and health of the debtor and the debtor's dependents, (4) whether the debtor lacks marketable skills, and (5) the debtor's age. *See Turretto v. U.S. (In re Turretto),* 255 B.R. 884, 889 (Bankr. N.D. Cal. 2000).

Here, the Plaintiff and her circumstances have not materially changed since she incurred the student loans. The Court recognizes that the Plaintiff has undisputed medical problems resulting from hepatitis, but the magnitude of these problems does not

constitute "additional, exceptional circumstances" that would support a finding of undue hardship under §523(a)(8). The Plaintiff has suffered from autoimmune hepatitis since at least 1999 yet has managed to complete a bachelor's degree and to maintain gainful employment. As to her stroke, the Plaintiff failed to establish that the stroke has had any effect on her ability to work or will have any effect on her ability to work in the future.

Even though the Plaintiff is not currently employed and has not yet made any use of her bachelor's degree, the Court finds that she has not established an inability at some point in the future to earn enough income to repay her student loans, nor has she shown a certainty of hopelessness. The Plaintiff has not demonstrated that there are barriers, such as psychiatric problems, lack of usable job skills, or severely limited education, that would lead this Court to conclude that she lacks the ability to repay the loan for several years. Indeed, the Plaintiff appears to have made little effort to find a job that would make use of her degree in statistics. The Court concludes that, under the circumstances, the Plaintiff has not satisfied the second element of the *Brunner* test.

### C. The Third Prong of *Brunner*

Finally, the third inquiry under the *Brunner* test is whether the debtor has made a good faith effort to repay the student loan. This aspect recognizes that undue hardship "encompasses a notion that the debtor may not willfully or negligently cause his own default, but rather his condition must result from 'factors beyond his reasonable control.'" *Stein v. Bank of New England (In re Stein)*, 218 B.R. 281, 288 (Bankr. D. Conn. 1998). "Factors to be considered include the number of payments the debtor made, attempts to negotiate with the lender, proportion of loans to total debt, and possible abuse of the bankruptcy system." *In re Wallace*, 259 B.R. at 185.

11

Here, the Plaintiff has made payments on her student loans when she has been financially able. The Plaintiff believed that she would be able to repay the loans when she borrowed the money and did intend to repay the loans. Her failure to participate in the Direct Loan Program or the IRCP does not prevent her from satisfying the good faith prong of the *Brunner* test. *See In re Barrett*, 487 F.3d at 364. The Court concludes that, under the circumstances, the Plaintiff has shown good faith in attempting to repay her student loans.

### D. Partial Discharge

Bankruptcy is rooted in equity, and a fair and proper restructuring of a debtor-creditor relationship occasionally creates a need for flexibility within the statutory parameters and objectives of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code specifically "authorizes a bankruptcy court to fashion such orders as are necessary to further the purposes of the substantive provisions of the Bankruptcy Code," *United States v. Sutton*, 786 F.2d 1305, 1307 (5th Cir. 1986), and this provision is interpreted liberally, *Matter of Zale Corp.*, 62 F.3d 746, 760 (5th Cir. 1995). Thus, although §523(a)(8) does not expressly provide for the partial discharge of a student loan, the United States District Court for the Eastern District of Texas has suggested that the bankruptcy court has authority to use its equitable powers as codified in §105(a) to, under appropriate circumstances, restructure the relationship between a debtor and a student-loan creditor. *Educ. Credit Mgmt. Corp. v. Young (In re Young),* 376 B.R. 795 (E.D. Tex. 2007). *See also, e.g., Graves v. Myrvang (In re Myrvang)*, 232 F.3d 1116 (9th Cir. 2000); *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433 (6th Cir. 1998); *Nary v. The Complete Source (In re Nary)*, 253 B.R. 752, 767 (N.D. Tex.

2000); *Hollins* v. *U.S. Dept. of Educ.* (*In re Hollins*), 286 B.R. 310, 317 (Bankr. N.D. Tex. 2002); *In re Barron*, 264 B.R. 833 (Bankr. E.D. Tex. 2001). *But see*, *e.g., Educ. Credit Mgmt. Corp. v. Carter*, 279 B.R. 872, 876 (M.D. Ga. 2002) (partial discharge of student loans not allowed); *Illinois Student Assistance Com'n, et al. v. Cox*, 273 B.R. 719, 724 (N.D. Ga. 2002) (student loans are either dischargeable or non-dischargeable); *Roach v. United Student Aid Fund, Inc. (In re Roach)*, 288 B.R. 437 (Bankr. E.D. La. 2003) (not adopting partial discharge); *Pincus v. Graduate Loan Ctr., et al. (In re Pincus)*, 280 B.R. 303 (Bankr. S.D. N.Y. 2002) (partial discharge of student loans not allowed); *Mallinckrodt v. Chem. Bank, et al. (In re Mallinckrodt)*, 260 B.R. 892 (Bankr. S.D. Fla. 2001) (bankruptcy court lacked authority to consider student loan debt restructuring).

Here, the Plaintiff has not satisfied the second element of the *Brunner* test and such satisfaction is required for the Court to consider a partial discharge. Moreover, the Plaintiff's current inability to make any payments on her loans appears to be self-imposed in that she has chosen not to work since leaving Mays. Considering that she is a single woman with no dependents, and that she has obtained a bachelor's degree from UTD, the Plaintiff appears capable of earning enough to allow her to make at least some payment on her student loans. The Court concludes that, under the circumstances, the Plaintiff is not entitled to a partial discharge of her student loans.

## V. Conclusion

The Plaintiff has not shown "undue hardship" that would entitle her to a discharge of her student loans pursuant to §523(a)(8) of the Bankruptcy Code. Accordingly, the Plaintiff is not entitled to a discharge of any portion of her student loans. The Court will enter a Judgment consistent with this Memorandum Opinion.

Signed on 12/17/2008

*Brenda T. Rhoades* MD
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE